# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ALONZO DAVIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No.  18 C 4345 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| PALOS HEALTH | ) | |
| (PALOS COMMUNITY HOSPITAL), | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Alonzo Davis sued his former employer Palos Community Hospital (PCH) alleging it discriminated against him because of his race and age, then retaliated against him when he complained about it.  (Dkt. 1-1.)  The Court previously dismissed Davis's complaint because it failed to state a claim.  (Dkt. 34.)  Davis amended his complaint asserting his four original claims and adding factual content that he presumably believes makes his claims plausible.  (Dkt. 35.)

PCH again moved to dismiss arguing Davis failed to cure the deficiencies the Court identified in his original complaint.  (Dkt. 39.)  In his response, Davis voluntarily withdrew his intentional infliction of emotional distress ("IIED") claim (Count III) and his request for certain damages associated with his Age Discrimination in Employment Act (ADEA) claim.  (Dkt. 47 at 5.)  Because Davis's complaint was untimely, and his claims are still facially implausible, the Court grants PCH's motion to dismiss (Dkt. 39) with prejudice because any amendment would be futile.

# I

The Court assumes the parties' familiarity with the relevant facts as recounted in the first opinion dismissing Davis's complaint. *See Davis v. Palos Health*, No. 18 C 4345, 2019 WL 214916, at \*1 (N.D. Ill. Jan. 16, 2019). Davis states three claims against PCH: age discrimination in violation of Title VII and the ADEA (Count I); race discrimination in violation of Title VII and Section 1981 (Count II); and retaliation in violation of Title VII (Count IV, incorrectly styled as Count VI).

## A

Addressing a few preliminary matters at the top should streamline the legal analysis. First, Davis insinuates several times in his complaint that PCH discriminated against him based on gender—Davis is a man. (Dkt. 35 ¶¶ 5, 33–34.) But those allegations amount to conclusory statements, so they do not suffice. *See Hernandez v. Nieves*, 762 F. App'x 325, 326 (7th Cir. 2019). What is more, Davis did not assert sex discrimination in his Equal Employment Opportunity Commission (EEOC) charge; he did not style one of his counts as sex discrimination in violation of Title VII in his complaint; and he never alleged facts that suggest PCH terminated him— and then decided not to rehire him—because he is a man.

The same goes for any disability (Dkt. 35 ¶¶ 15, 20) and Family and Medical Leave Act (FMLA) (Dkt. 35 ¶ 25) discrimination that Davis mentions in passing but does not develop beyond speculation. Those are discrete forms of discrimination that several federal statutes protect against. Davis cannot continue to leave PCH and the Court guessing as to the basic reasons for his lawsuit. Davis did not state Title VII

(based on sex), FMLA, or Americans with Disabilities Act (ADA) claims, so the Court need not rule on them.

B

Second, Davis purports to allege an age discrimination claim under Title VII in Count I.  (Dkt. 35 at 9.)  That was a technical error, though Davis need not plead law.  To clarify the issue, Title VII does not proscribe age discrimination; the ADEA does.  *Compare* 42 U.S.C. § 2000e–2 (prohibiting discrimination based on "race, color, religion, sex, or national origin"), *with* 29 U.S.C. § 621 (banning discrimination based on "age"); *see Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 408 (7th Cir. 1989), *aff'd*, 494 U.S. 820 (1990); *Jennings v. Sallie Mae, Inc.*, 358 F. App'x 719, 721 (7th Cir. 2009); *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 304–05 (D.D.C. 2015).

As it happens, Congress considered and rejected adding age to Title VII's list of protected classes when it was deliberating the enactment of the Civil Rights Act of 1964.  *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 232–33 (2005) (discussing the legislative history of Title VII and the ADEA).  Of course, three years later, Congress passed the ADEA.  *See id.*; *see also Kleber v. CareFusion Corp.*, 914 F.3d 480, 496 (7th Cir. 2019) (en banc) (Hamilton, J., dissenting) (addressing the remarkable similarity of the two statutes).  The Court will accordingly resolve PCH's motion to dismiss Count I under the ADEA.

## II

Moving to the merits, PCH once again argues in its motion to dismiss that: (1) Davis's complaint was untimely; (2) certain allegations are outside the statutes of limitations; and (3) the discrimination claims are facially implausible. The Court analyzes each contention in turn.

### A

The Court previously held that Davis's statutory discrimination claims were untimely because he filed his federal lawsuit 99 days after the EEOC issued its right-to-sue letter. Generally, Title VII and ADEA plaintiffs must sue within 90 days of receiving notice of their right to sue. 42 U.S.C. 29 § 2000e-5(f)(1); U.S.C. § 626(e). In this context, notice means "actual notice," or the day the individual received the EEOC's letter and not the day the EEOC sent it. *See Johnson v. Fed. Marine Terminals, Inc.*, 626 F. App'x 190, 192 (7th Cir. 2015).

So, if a plaintiff does not receive the letter through no fault of her own, the 90-day clock does not start running until she does receive it. *See Gray-Brock v. Illinois Am. Water Co.*, 609 F. App'x 867, 869–70 (7th Cir. 2015). But if the plaintiff, for instance, does not update her address with the EEOC, that makes her non-receipt of the right-to-sue letter her own fault, and the 90-day clock starts running once the Postal Service attempts delivery at the last known address. *See King v. Ford Motor Co.*, 872 F.3d 833, 839 (7th Cir. 2017) (citing *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005)).

To be sure, this rule is an affirmative defense, which typically means Davis need not anticipate and overcome it. *See Del Korth v. Supervalu, Inc.*, 46 F. App'x 846, 847–48 (7th Cir. 2002). But by alleging the relevant dates in his complaint, Davis gave the Court everything it needs to rule. *See Lee v. Nasatir*, 671 F. App'x 388 (7th Cir. 2016); *Prince v. Stewart*, 580 F.3d 571, 574 (7th Cir. 2009).

In this case, Davis alleges neither him nor his counsel ever received the right-to-sue letter in the mail. (Dkt. 35 ¶ 36.) Instead, Davis's counsel received the letter via email nearly a month later. *Id.* But, relying on *Bobbitt v. Freeman Companies*, 268 F.3d 535 (7th Cir. 2001), the Court previously directed Davis to explain his counsel's failure to receive the notice within the presumptive five days, seeing that the notice itself indicates that the EEOC properly addressed it to Davis's counsel's office. (Dkt. 34 at 5.)

Davis failed to allege why his counsel did not receive the letter after the EEOC sent it to counsel's office. Davis, in his response brief, alternatively blames the Postal Service and insists there is no evidence in the record that the Postal Service ever delivered the letter. (Dkt. 47 at 2, 4.) But without any allegation in the complaint that the EEOC failed to mail the notice or that the Postal Service failed to timely deliver it, the Court presumes the mail reached its destination; or, at the very least, that the Postal Service promptly notified Davis's counsel that it had mail to deliver to him. *See Bobbitt*, 268 F.3d at 538. Davis does not explain why his counsel was unable to retrieve the mail for this approximately one-month period. *See id.*

Granted, this case is slightly distinguishable from *Bobbitt* because there the plaintiff conceded receiving the letter from the Postal Service (either at her residence or the post office), albeit late because she did not diligently check for it. *See id.* at 537. Here, Davis's counsel claims to have never received the letter in the mail. (Dkt. 35 ¶ 36.) Still, Davis fails to plausibly allege why his counsel did not receive the right-to-sue letter soon after the EEOC mailed it. It is not enough to vaguely assert that Davis did not receive the letter until the day the EEOC emailed it to his counsel.

For a second time, then, Davis did not account for the relevant period, leaving the Court with the impression that Davis's counsel failed to responsibly check his mail. Making matters worse, counsel is of course aware of the legal consequences associated with the right-to-sue letter. The fact that he did not act sooner to file his client's complaint positively within the 90-day window is curious at best, incompetent at worst. *Cf. Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004); *McCarty v. Astrue*, 528 F.3d 541, 545 (7th Cir. 2008). Davis's lawsuit is therefore untimely.

B

Even if Davis's lawsuit was timely, a handful of Davis's allegations are too old to form the basis of his discrimination charge. Before coming to federal court, Davis needed to file a charge with the EEOC or Illinois Department of Human Rights (IDHR) within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e)(1) (Title VII statute of limitations); 29 U.S.C. § 626(d)(1)(B) (ADEA statute of limita-tions); *see Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016). "Section

1981 claims must be filed within four years of the alleged discriminatory act." *Riley*, 829 F.3d at 891 (citing 28 U.S.C. § 1658).

Here, Davis filed his charge of discrimination on July 5, 2017. (Dkt. 39-1.) Any Title VII or ADEA violation related to an incident occurring before September 8, 2016 (300 days before the filing), and any alleged § 1981 violation related to an incident occurring before July 5, 2013 (four years before the filing), are therefore time-barred. In his amended complaint, Davis begins with the blanket assertion that PCH's discrimination against him reaches all the way back to February 2003. (Dkt. 35 ¶ 5.) Then, in mostly chronological order, he starts with a May 2011 toilet seat incident and works his way up to October 28, 2016, when PCH terminated Davis, and ends on February 1, 2017, when PCH declined to rehire hm. *Id.* ¶¶ 6, 33–34.

That leaves, generously, ten factual allegations that postdate September 2016 to support Davis's Title VII and ADEA claims. With respect to his § 1981 claims, most of Davis's allegations are within the four-year window except those concerning the toilet seat incident, his personnel file, and failure-to-promote claim. *Id.* ¶¶ 5–8. Again, the statute of limitations is an affirmative defense that Davis need not address in his complaint; however, by alleging specific dates, Davis effectively pleaded himself out of court.

In his response in opposition to PCH's motion to dismiss, Davis conceded that some of the events he pleaded date back beyond the 300-day statutes of limitations. (Dkt. 47 at 4.) Still, he argued, those events are viable under a continuing violation theory. *Id.* Davis is wrong. As the Court ruled previously, "there is no general

continuing-violation doctrine in the federal law of employment discrimination."
*Crum v. Advocate N. Side Health Network*, 733 F. App'x 842, 843 (7th Cir. 2018) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). That doctrine would only apply to a hostile work environment claim, which Davis does not assert. *See Lewis v. Wilkie*, 909 F.3d 858, 868 n.2 (7th Cir. 2018) (distinguishing retaliation claim from hostile work environment claim).

The continuing violation doctrine does not apply to discrete, isolated, and completed acts of discrimination. *See Kuhn v. United Airlines, Inc.*, 640 F. App'x 534, 537 n.1 (7th Cir. 2016) (citing *Garrison v. Burke*, 165 F.3d 565, 570 (7th Cir. 1999)). The Court need not accept Davis's "bare allegation of an ongoing hostile work environment in order to find a continuing violation." *Id.* (citing *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)); *see Hernandez v. Nieves*, 762 F. App'x 325, 326 (7th Cir. 2019). Davis's alleged incidents of discriminatory harassment are just not sufficiently related. Moreover, Davis previously had the opportunity to sue for discrimination or hostile work environment based on the events preceding his 2017 discrimination charge. He chose not to do so within the time allowed. *Cf. Kuhn*, 640 F. App'x at 537 n.1. Accordingly, the statutes of limitations bar many of Davis's allegations.

C

Assuming again for the sake of argument that Davis's lawsuit is timely, and the statutes of limitations are inapplicable, Davis still fails to plausibly state claims upon which relief can be granted. In the employment discrimination context, a

complaint must identify: (1) the type of discrimination; (2) who did it; and (3) when they did it. *See Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) (collecting cases); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015).

Davis's generalized allegations do not amount to colorable claims. The closest Davis comes to a hint of racial animus is his allegation that a co-worker told him that his manager told her that he (Davis) "did not want to be seen eating lunch with a bunch of white people." (Dkt. 35 ¶¶ 29, 46.) As an initial matter, who Davis wants to be seen with is his business. More to the point, this incident allegedly occurred in December 2016, more than two months after PCH terminated Davis in October 2016. *Id.* ¶¶ 29, 33. It could not have formed the basis for his firing. Perhaps, though, Davis thinks it played into PCH's decision to not rehire him. Even so, based on this allegation alone, the Court cannot draw the reasonable inference that PCH did not rehire Davis because of his race.

True, the § 1981 claim sweeps more broadly; however, Davis still fails to connect any of his allegations to his race. *See Arnold v. Visiontek Prod., LLC*, 748 F. App'x 59, 61 (7th Cir. 2019). Indeed, Davis's complaint almost entirely relies on general speculation that PCH's motive was race, or for that matter, age. (Dkt. 35 ¶ 9 (alleging somebody drew an offensive, derogatory picture but not specifying how it was discriminatory).) Regarding age, it is not enough to show that it was a motivating factor, as it is with race. *See Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th

Cir. 2018). Instead, Davis must allege that, but for his age, his firing and failed re-hiring would never have happened. *See id.*

Davis falls flat. He alleges that his supervisors and co-workers told him that "he was too old and that a younger replacement should take his position." (Dkt. 35 ¶ 39.) Davis does not specify who said this and when. By itself, this statement does not permit a reasonable factfinder to infer discriminatory intent in Davis's firing and failed rehiring. In other words, Davis failed to plausibly allege that PCH terminated him and then decided to not rehire him because of his age.

So, too, with retaliation, which also has a but-for standard of causation. *See Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018), *reh'g denied* (July 24, 2018). To be clear, Davis must allege that he engaged in: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566 (7th Cir. 2019) (internal citations and quotation omitted). As outlined above, Davis wholly fails to identify a common thread linking the sporadic episodes in his complaint. Pertaining to his "statutorily protected activity," Davis generally asserts that PCH retaliated against him because he complained about discrimination. (Dkt. 35 ¶ 7.)

But the more specific allegations Davis makes about his complaints and personnel grievances concern nondiscriminatory activity. *Id.* ¶ 11 (requesting meetings with management to discuss whether PCH was investigating him); ¶ 14 (informing management about accusations of his alcohol consumption); ¶ 21 (challenging a warning he received for leaving the office early without permission); ¶ 22 (complaining

about a false accusation that he violated hospital policy); ¶ 23 (requesting to reply to an allegation that he looked at a coworker's email); ¶ 31 (asking to meet with president of hospital to share his experience as an African-American employee).

It follows that Davis did not engage in statutorily protected activity because none of his alleged complaints concerned race or age discrimination. *See Cervantes*, 914 F.3d at 566; *Scheidler v. Indiana*, 914 F.3d 535, 542–43 (7th Cir. 2019), *reh'g and suggestion for reh'g en banc denied* (Mar. 1, 2019); *Emerson v. Dart*, 900 F.3d 469, 472–73 (7th Cir. 2018), *reh'g denied* (Sept. 25, 2018); *Howard v. Indianapolis Pub. Sch.*, 727 F. App'x 198, 202 (7th Cir. 2018).

Turning to the materially adverse employer action, Davis claims his hostile work environment, termination, and loss of other employment opportunities suffice. The Court already discarded the hostile work environment claim and it is unclear what opportunities Davis is referring to. Of course, Davis filed his discrimination charge five months after PCH did not rehire him and nine months after it fired him, so that cannot provide the basis for retaliation either.

More broadly, Davis fails to tell a coherent story that holds together. For example, Davis generally concludes that PCH treated similarly-situated employees different from him, meaning non-African-American and young employees. But he then neglects to allege any comparators, which makes his claims facially implausible because differences in experience, education, or qualifications could account for disparate treatment. *See Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018); *Moreland v. Nielsen*, 900 F.3d 504, 507 (7th Cir. 2018); *Brown v. Bd. of Trustees of The Univ. of*

*Illinois*, 673 F. App'x 550, 552–53 (7th Cir. 2016).  The Court cannot infer discrimination based on threadbare recitals of the elements of a claim.

### III

All in all, Davis's complaint reads like a disgruntled employee's airing of trivial harms, petty slights, and minor annoyances that occur in workplaces every day.  Unfortunately, all employees experience it.  Taking offense to something, however, does not make it discrimination as a matter of law.  It is important to separate the two considering that Title VII "does not set forth 'a general civility code for the American workplace.'"  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Because Davis's complaint remains legally insufficient—and any amendment would be futile based on his neglect to adequately plead his claims—the Court grants PCH's motion (Dkt. 39) and dismisses all claims alleged in the complaint with prejudice.

_____
Virginia M.  Kendall
United States District Judge

Date: June 27, 2019